**\*\* NOT FOR PUBLICATION \*\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FRANK RAMOS and CHRISTINE RAMOS,

　　　　　　　　　Plaintiffs,

　　　　v.

WELLS FARGO BANK, N.A.

　　　　　　　　　Defendant.

Civil Action No. 3:16-0880 (FLW)(LHG)

**Opinion**

**WOLFSON, United States District Judge:**

This matter comes before the Court on a motion filed by Defendant Wells Fargo Bank, N.A. ("Defendant"), seeking dismissal of the complaint filed by Plaintiffs Frank and Christine Ramos ("Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs allege that their credit was adversely affected by Defendant's improper reporting of their delinquency on a loan owned and serviced by Defendant, resulting in monetary damages and lost opportunities for a sale of Plaintiffs' property. Plaintiffs assert claims for: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Count I); (2) violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (Count II); (3) breach of duty of good faith and fair dealing (Count III); and (4) negligence (Count IV).

For the reasons set forth below, Defendant's Motion to dismiss is granted in part and denied in part as follows: Defendant's motion to dismiss Count I, Plaintiffs' FDCPA claim, is granted in part and denied in part because although Plaintiffs have alleged that Defendant is a "debt collector" under the statute, only those violations alleged to have occurred within the one-year statute of limitations are actionable, and thus, Plaintiffs' claims based on conduct occurring before

September 28, 2014, are dismissed with prejudice; Defendant's motion to dismiss Count II, Plaintiffs' FCRA claim, is granted and Plaintiffs' claim is dismissed with prejudice with respect to 15 U.S.C. § 1681s-2(a) because there is no private right of action under that provision of the statute, and without prejudice to the extent raised under 15 U.S.C. § 1681s-2(b) for failure to state a claim; Defendant's motion to dismiss Counts III and IV as preempted by the FCRA is granted as to claims based upon the allegations in ¶ 87(g) of the Complaint and denied as to the remainder of the claims because only state law claims based on Defendant's reporting to credit agencies are barred under the statute; Defendant's motion to dismiss Count III, Plaintiffs' good faith and fair dealing claim, for failure to state a claim is granted and Plaintiffs' claim is dismissed without prejudice for failure to plead any benefit under a contract with Defendant of which Plaintiff was allegedly deprived as a result of Defendant's conduct; and, lastly, Defendant's motion to dismiss Count IV, Plaintiff's negligence claim, for failure to state a claim is granted and Plaintiffs' claim is dismissed because Plaintiffs have failed to allege any independent duty of care imposed upon Defendant by law.

## I.     FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are taken from the Complaint, unless otherwise noted. On or about January 26, 2011, Plaintiffs Frank Ramos and Christine Ramos ("Plaintiffs") entered into a consumer credit transaction with WCS Lending, LLC, from which they obtained a loan for four hundred four thousand, nine hundred ninety nine dollars ($404,999.00). Compl. ¶ 6. Plaintiffs secured the loan with their principal residence in Middlesex County, New Jersey.  The note used to secure Plaintiffs' loan identified WCS as lender and Mortgage Electronic Registration Systems, Inc. ("MERS"), as beneficiary. *Id.* at ¶ 6. On March 16, 2011, Plaintiffs' mortgage was recorded with the register of Deeds and Mortgages for Middlesex County. *Id.* at ¶ 7.

On August 23, 2011, Plaintiffs contacted Wells Fargo employee, Wendy Freeman, to discuss mortgage assistance options. Freeman informed Plaintiffs that they did not qualify for any form of mortgage assistance.[1] *Id.* at ¶¶ 11-13. On September 27, 2011, Christine Ramos became unemployed. *Id.* at ¶ 14. Plaintiffs then again contacted Defendant to discuss mortgage assistance and were again transferred to Wendy Freeman. Ms. Freeman informed Plaintiffs that they were not eligible for mortgage assistance. *Id.*

On October 3, 2011, Plaintiff Frank Ramos became unemployed. *Id.* at ¶ 15. Plaintiffs again contacted Defendant, were transferred to Wendy Freeman, and were informed that, despite their change in circumstances they were not eligible for mortgage assistance. *Id.* Plaintiffs placed their property for sale on October 5, 2011. *Id.* at ¶ 16. On November 9, 2011, Plaintiffs again contacted Ms. Freeman and informed her that they were interested in pursuing a short sale of the their property. ¶ 18. Ms. Freeman informed Plaintiffs, for the first time, that they would be eligible for mortgage assistance in the form of a short sale, but only if they were delinquent on their loan. *Id.* at ¶ 18-19. Ms. Freeman, on behalf of Defendant, thereafter advised Plaintiffs to immediately cease making payments on their loan. ¶ 20. Plaintiffs subsequently ceased making payments and became delinquent on their loan. *Id.* at ¶ 21.

From November 9 until late February, Plaintiffs were unable to contact Freeman again. *Id.* at ¶ 23. As a result, Plaintiffs unilaterally attempted a short sale of their property. *Id.* at ¶ 24.

---

[1] Defendant, Wells Fargo, contends that it was the servicer of Plaintiffs' loan since shortly after the loan's origination, but, as discussed below, identifies no support for this contention in the allegations of the complaint or the documents attached to the complaint. Common sense suggests that because Plaintiffs called Defendant to discuss mortgage assistance options in August 2011, at the very least Plaintiffs believed Defendant to be the servicer of their loan at that time. At the stage of a motion to dismiss, however, the Court is bound by the allegations in the Complaint and the supporting documents attached thereto. The Court cannot determine as a matter of law that Defendant Wells Fargo was legally the servicer of Plaintiffs' loan in August 2011 in the absence of allegations to that effect.

Plaintiffs received an offer from a potential buyer for their short sale in late February 2012, and promptly vacated the home and moved to North Carolina in an effort to find employment *Id.* at ¶ 25-26.

On March 13, 2012, Defendant became the owner of Plaintiffs' loan by action of a Corporate Assignment of Mortgage executed by MERS as nominee for the original owner WCS Lending. Compl. ¶ 8; Ex. C.

Plaintiffs submitted the buyer's offer to Defendant for approval, but Defendant refused to acknowledge Plaintiffs' submission of the terms of the short sale offer. ¶ 28. After not receiving any responsive communications from Defendant, Plaintiffs hired an attorney, Ms. Blanco, to communicate with Defendant on their behalf. *Id.* at ¶ 29. Ms. Blanco confirmed with Defendant that no additional documents were needed from Plaintiffs in order to complete the short sale approval. *Id.* at ¶ 30.

On June, 12, 2012, Wells Fargo representative, Bruce Barker, contacted Plaintiffs, informing them that their short sale had been closed and transferred to foreclosure. *Id.* at ¶¶ 30-31. A series of calls between Ms. Blanco and Mr. Barker followed, during which Mr. Barker admitted that he "made a mistake" and that Defendant required additional documents from Plaintiff to move forward with the short sale. *Id.* at ¶ 32. Despite Mr. Barker's representations that he would reopen the short sale, Plaintiffs were unable to contact Defendant for a month and the short sale was not reopened during this period. *Id.* at ¶ 32-33. Plaintiffs eventually reached another Wells Fargo employee, Felicia, on July, 12, 2012, who informed Plaintiffs that there was no short sale file open on Plaintiffs' loan. *Id.* at ¶ 33. Plaintiffs allege that, as a result of the uncertainty behind Plaintiffs relationship with Defendant, their prospective buyer reneged on the purchase offer. *Id.* at ¶ 34.

Plaintiffs contacted Defendant again on July, 31, 2012, at which time they spoke to an employee named Owen, who transferred Plaintiffs to Home Preservation specialist Scott D'Attilio. *Id.* at ¶ 35. Mr. D'Attilio informed Plaintiffs that he was not in charge of the short sale file, and that it would take him between three and five days to reopen the short sale file and for the Federal Housing Administration ("FHA") to notify him of the file's approval. *Id.* at ¶ 36.

During their correspondence, Plaintiffs asked Mr. D'Atillio about the possibility of a deed-in-lieu option. Mr. D'Atillio informed Plaintiffs that the deed-in-lieu option would not become available to Plaintiffs until they first attempted and were denied approval for a short sale. *Id.* at ¶ 37. Plaintiffs allege that Defendant did not place anyone on the short sale file until September 18. They also contend that the appraisal company, which Defendant hired to review the property cancelled several scheduled appraisals. *Id.* at ¶ 38-39. Plaintiffs further allege that on September 25, Defendant closed the short sale file review. Despite having closed the file, Defendant nevertheless conducted appraisals of the property, accompanied by Plaintiffs' realtor, on October 4, 2012. *Id.* at ¶ 39-41.

On October 10, 2012, the FHA denied the short sale. *Id.* at ¶ 42. Plaintiffs contacted Mr. Jones from the United Sates Department of Housing and Urban Development (hereinafter "HUD"), who asked if Plaintiffs were interested in the possibility of a deed-in-lieu. *Id.* at ¶ 44-46. Plaintiffs thereafter informed Mr. Jones that Defendant had advised them that a deed-in-lieu was not an option for them until they had already been denied a short sale. *Id.* at ¶ 47. Mr. Jones spoke to Defendant on Plaintiffs behalf, requesting that they begin a deed-in-lieu process immediately; Mr. Jones also spoke to Plaintiffs and asked them to contact him if Defendant had not provided the deed-in-lieu paperwork within a certain timeframe. *Id.* at ¶ 49. Defendant did not send Plaintiffs the necessary paperwork until two weeks after the timeframe established by Mr. Jones. *Id.* at ¶ 49-

50.  On December 11, 2012, Wells Fargo employee, Jessie Sanchez, informed Plaintiffs that the deed-in-lieu had been approved. *Id.* at ¶ 53. Plaintiffs allege that they met all requirements for the deed-in-lieu and that their attorney received email confirmation. *Id.* at ¶ 55-57.

On January 29, 2013, Defendant discharged the mortgage, satisfying Plaintiffs' loan. *Id.* at ¶ 58-59. Defendant, however, did not record the discharge until more than a year later, on February, 6, 2014. *Id.* at ¶ 60. A pipe burst at the property on January 29, 2013, *Id.* at ¶ 61, and Wells Fargo employee, Ms. Sanchez, informed Plaintiffs that it was their responsibility to submit an insurance claim to Defendant's property insurance provider, Praetorian Insurance Company. *Id.* at ¶ 62. Plaintiffs followed Defendant's instructions, even though they had already transferred title and ownership of the property. *Id.* at ¶ 64. From February 2013 to March 2015, Defendant reported Plaintiffs as delinquent on their loan, despite the loan having been discharged on January 29, 2013. *Id.* at ¶ 65.

Plaintiffs filed their initial complaint in Middlesex County Superior Court on September 28, 2015, alleging violations of the FDCPA, FCRA, and state law claims for breach of the covenant of good faith and fair dealing and negligence. Defendant removed the matter to this Court on February 18, 2016. On March 9, 2016, Defendant filed its motion to dismiss Plaintiffs' Complaint in its entirety.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust*

*Litig.,* 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The Third Circuit requires a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal.* First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012). Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.; see also Iqbal,* 556 U.S. at 678-79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal quotations and citations omitted). Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian,* 696 F.3d at 365 (quoting *Iqbal,* 556 U.S. at 679). A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. . . . However, an exception to the general rule is that a "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.,*

114 F.3d 1410, 1426 (3d Cir. 1997). "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Donald J. Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

## III.   DISCUSSION

### A.   Application of the FDCPA to Defendant

Plaintiffs assert that Defendant has violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, by falsely reporting Plaintiffs' loan as delinquent to various credit reporting agencies for twenty-six months between February 2013 and March 2015, causing significant damage to Plaintiffs' credit. Compl. ¶ 82. Defendant moves to dismiss Plaintiffs' FDCPA claim on two, alternative grounds. First, Defendant contends that it is exempt from the FDCPA as a 'Creditor', and a 'Servicer' pursuant to 15 U.S.C. § 1692(a)(4). Second, Defendant argues that Plaintiffs' claim is barred by the one-year statute of limitations for FDCPA claims. For the reasons that follow, Defendant's motion is denied.

### 1.   Defendant's Status as a Debt Collector:

Plaintiffs in this case have adequately alleged that Defendant is a debt collector subject to the FDCPA. The Third Circuit has long recognized that the provisions of the FDCPA "generally only apply to 'debt collectors.'" *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir.

2000) (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000)). "Debt collector" is defined under the statute as:

> Any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. §1692(a)(6). Congress crafted a distinction between such "debt collectors" and "creditors" to reflect the real difference in incentives between collection actions taken by the actual owner of a debt and those undertaken by one who merely collects on behalf of others.

The FDCPA defines a "creditor" as:

> Any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

Fair Debt Collection Practices Act, 15 U.S.C. §1692(a)(4). "[C]reditors who collect in their own name and whose principal business is not debt collection . . . are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill." *Pollice*, 225 F.3d at 403 (quoting *Aubert v. American Gen. Fin. Inc.*, 137 F.3d 976, 978 (7th Cir. 1998). The same rationale governing creditors applies to loan servicers and owners of debts who were not the original holders of a debt, but became so after an assignment while the loan was still current (not in default). *Pollice*, 225 F.3d, at 403 (quoting Hon. D. Duff McKee, *Liability of Debt Collector to Debtor under the Federal Fair Debt Collection Practices Act*, 41 Am. Jur. Proof of Facts 3d 159, at § 3 (1997)) ("[T]he assignee of a debt who acquires it before default is considered the owner of the debt and may pursue collection without concern for the limitations of the FDCPA.").

The post-assignment servicers and owners of debts that were in default at the time of assignment, however, are treated differently under the law. "[A]n assignee may be deemed a 'debt

collector' if the obligation is already in default when it is assigned." *Pollice*, 225 F.3d at 403. After having determined that a loan was assigned after it went into default, courts must determine whether the new servicer or owner of the debt falls within the FDCPA's definition of a debt collector.

Because not all such servicers or owners are necessarily in the business of collecting debt for others — the plaintiff's debt, might for example be the only one or one of a few acquired by a business that is generally a manufacturer, a retailer, or even a non-debt collecting financial services provider —  the Court must inquire, as a factual matter, whether "the principal purpose" of the servicer's or owner's business "is the collection of any debts . . . owed or due another," or whether the servicer or owner "regularly collects or attempts to collect . . . debts owed . . . or due another." 15 U.S.C. § 1692a(6). In *Pollice*, for example, the Third Circuit found that, where defendant had been assigned the ownership interest in plaintiff's debt after the debt had gone into default, defendant was a debt collector under the FDCPA because the "principal purpose" of defendant's business was admitted to be the collection of "defaulted obligations which it purchases from municipalities." 225 F.3d at 404. Similarly, in the unreported case of *Oppong*, about which more will be discussed below, the Third Circuit, after a review of the extensive factual inquiry conducted by the district court below on summary judgment, found that, where the defendant, Wells Fargo, had been assigned the servicing rights to plaintiff's loan after the loan had gone into default, Wells Fargo was a debt collector because it regularly collects debts owed to another. *Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 119 (3d Cir. 2007). The Third Circuit was particularly swayed in its holding by an affidavit stating that "Wells Fargo acquires approximately 89 home mortgages that are in default in a typical three-month period." *Id.* In *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989), the Circuit Court had found as a matter of law that an individual that

filed 175 foreclosure or other collection suits in an eighteen-month period "regularly" collected debts owed to another. *Id.* at 120. As the evidence in the summary judgment record in *Oppong* indicated that Wells Fargo acquired 534 defaulted mortgages in such period and attempted to collect upon them, the Third Circuit found that Wells Fargo also met the definition of "regularly" collecting such debts and was therefore subject to the FDCPA. *Id.*; *see also Skinner v. Asset Acceptance, LLC*, 876 F. Supp. 2d 473, 476 (D.N.J. 2012) ("The FDCPA's definition of 'debt collector' does not exclude entities seeking to collect debts they have purchased from another that were already in default. . . . Defendant is in the business of acquiring and collecting defaulted debt and Plaintiff's . . . debt was in default when Defendant purchased it. Accordingly, Defendant is a debt collector under the FDCPA.").

In its motion to dismiss, Defendant argues that it is a "creditor" and not a "debt collector" because it owns the debt it is attempting to collect, as evidenced by the assignment agreement attached to the Complaint. Compl. Ex. C. Defendant further argues, in the alternative, that it is not a "debt collector" by action of § 1692a(6)(F) because it has been the servicer of Plaintiff's loan since before the loan went into default.

Defendant's first argument fails because the Complaint alleges that Plaintiffs' loan was in default at the time that Defendant acquired its ownership interest in the loan via assignment. Plaintiffs allege in the Complaint that they went into default shortly after November 2011, Compl. ¶¶ 19, 22, and that Defendant was not assigned the ownership of Plaintiffs' debt until March 2012, *id.* at ¶ 8. Accordingly, under the Third Circuit's holding in *Pollice*, Defendant, as the owner of a debt obtained by assignment after the debt went into default, may be a "debt collector" under the FDCPA, provided that it otherwise meets the criteria of the definition set forth in § 1692a(6), namely that it either is principally in the business of collecting debts owed to others or that it

regularly does so. *Oppong*, 215 F. App'x at 118 ("a business may be a 'debt collector' because its 'principal purpose' is the collection of debts or because it 'regularly' engages in the collection of debts. This definition of 'debt collector' excludes creditors who attempt to collect their own debts, but does not exclude an entity in Wells Fargo's position who has acquired a debt that was already in default.").

Plaintiff contends that the Third Circuit's unreported decision in *Oppong*, stands for the proposition that, as a matter of law, Wells Fargo is an entity that "regularly" collects debts owed to others and is thus a debt collector under the FDCPA. The Third Circuit in *Oppong*, however, had the benefit of a fully developed factual record on summary judgment in reaching its decision. It relied on facts drawn from an affidavit submitted by the parties as to Wells Fargo's debt collection operations in order to find that Wells Fargo fell within the definition of a "debt collector" under the statute. Here, ruling upon Defendant's motion to dismiss, this Court has no such facts before it.  For this case, therefore, the import of *Oppong*, a case decided nine years ago, is not that, today Defendant Wells Fargo is a debt collector under the FDCPA; but rather that, Plaintiffs having alleged that Defendant was assigned an ownership interest in Plaintiffs' debt after the debt went into default, the question of whether Defendant's subsequent attempts to collect the debt it owned rendered it a "debt collector" under the statute. Just as in *Oppong*, this is a question of a fact that cannot be determined at the stage of a motion to dismiss.

Defendant's second argument, that it is not a debt collector because it has been the servicer of Plaintiffs' loan since before the loan went into default, similarly cannot succeed on the basis of the allegations in the Complaint alone. In briefing, Defendant asserts that it has been the servicer of Plaintiffs' loan since shortly after the loan was originated in January 2011. Defendants' Reply Brief, p. 7 ("Wells Fargo serviced the Loan after its origination."); Compl. ¶ 6 ("On or about

January 26, 2011, Plaintiffs entered into a consumer credit transaction with WCS Lending, LLC by obtaining a mortgage loan"). As Plaintiffs did not go into default until November 2011, if Defendant's assertion were supported by the facts, then Defendant would potentially be exempt from the coverage of the FDCPA under § 1692a(6)(F) . The provisions of the Complaint to which Defendant cites in support of its assertion that it has long been Plaintiffs' servicer are insufficient for this Court to find that Defendant had legally been designated as the servicer of Plaintiff's loan or been assigned servicing rights prior to Plaintiffs' default in November 2011. Defendant's Rep. at p. 7-8 (citing Compl. ¶¶ 11, 12, 19, and 22). Complaint paragraph 11, states only that "Plaintiffs contacted WELLS FARGO on August 23, 2011 for the purpose of discussing mortgage assistance options." Paragraphs 12, 19, and 22, only deal with Plaintiffs' assertions of currentness on their mortgage loan until November 2011.  Accordingly, Defendant relies exclusively on the fact that Plaintiffs called Defendant to discuss mortgage assistance in August 2011 to establish that Defendant legally was the servicer of Plaintiffs' loan at the time, and therefore not subject to the FDCPA. This Court finds this allegation plainly insufficient to support such a finding on the face of the Complaint.

To the contrary, the only allegation concerning the specific timing of Defendant's role as a servicer in connection with Plaintiffs' FDCPA claim is that "WELLS FARGO is the alleged Assignee of the mortgage loan and was the purported Servicer and Noteholder at the time of satisfaction of the Loan." Compl. ¶ 5. Plaintiffs allege that the loan was satisfied by the Discharge of Mortgage executed on January 29, 2013. Compl. ¶ 58. The earliest point for which there are definite allegations of Defendant's status as a servicer is thus January 2013, over a year after Plaintiff's mortgage loan is alleged to have gone into default. Moreover, all of Defendant's conduct alleged to have violated the FDCPA occurred between February 2013 and March 2015, in the

period after which Defendant is alleged to have been a servicer and hold of Plaintiffs' debt, and long after Plaintiffs' default. Compl. ¶ 82.[2]

Accordingly, if Defendant wishes to substantiate its assertion that "Wells Fargo serviced the Loan after its origination," the appropriate vehicle would be a motion for summary judgment accompanied by supporting exhibits and affidavits. Defendant's motion to dismiss Plaintiff's FDCPA claims on this basis is denied.[3]

### 2.  Statute of Limitations:

A violation of the FDCPA requires a "particular act taken [in] violation of the FDCPA." *Parker v. Pressler & Pressler, LLP* 650 F. Supp. 2d 326, 341 (D.N.J. 2009); *See also, Huertas v. U.S. Dept. of Ed.,* Civ. No. 08–3959, 2009 WL 3165442, at *3 (D.N.J. Sept. 28, 2009) ("violation of a provision of the FDCPA requires a discrete act; that is, an identifiable incident wherein the plaintiff's rights under the Act were violated"). In the context of certain of the provisions of the Act, therefore, the Third Circuit has held that where the violative act is, by statute, an initial act or communication, subsequent acts or communications do not extend the statute of limitations as continuing violations. *See Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed. Appx. 128, 130–31 (3d

---

[2] Whether this conduct, occurring after the alleged discharge of Plaintiffs' debt can constitute conduct in connection with the collection of a debt under the FDCPA, is a question not now before the Court. In its Reply briefing, Defendant raises an argument, not identified in its motion or opening brief, and to which Plaintiffs therefore did not have an opportunity to respond in opposition, that Defendant's alleged reporting to credit agencies and conduct concerning the Deed in Lieu are not conduct in connection with a collection of debt and therefore are not subject to the FDCPA. Defendant fails to cite any precedent in support of its arguments, which are limited to four sentences of unsupported legal conclusions. The Court will not address these issues *sua sponte*.

[3] The Court also notes that Defendant has failed to brief the issue whether, even assuming that it were a servicer before Plaintiffs' mortgage went into to default, it would nevertheless be exempt from the FDCPA for the violations alleged to have taken place between February 2013 and March 2015, a period after Defendant had acquired Plaintiffs' defaulted loan by assignment and, based upon the evidence to be presented, may have been a "debt collector" under the Act.

Cir. 2009) (recognizing that "[w]here FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation," the FDCPA's statute of limitations begins to run at the filing or service of process for the "underlying collection action"); *Peterson v. Portfolio Recovery Associates, LLC*, 430 F. App'x 112, 114 (3d Cir. 2011) ("We agree with the common-sense conclusion reached by other courts that there can be only *one* 'initial communication' between a debt collector and a consumer, and any communication that follows the 'initial communication' is necessarily *not* an 'initial' communication. Faced with cases in which a validation notice did accompany an initial communication, but the plaintiff argued that the FDCPA was violated by subsequent communications lacking such a notice, courts have concluded that a debt collector has no obligation to send a validation notice with any communication other than the initial communication." (citations omitted)); *id.* at 115 ("Other circuits have held, entirely reasonably, that the FDCPA statute of limitations should begin to run on the date of the debt collector's last opportunity to comply with the Act. Regardless of whether [defendant] had included a validation notice with its [later] letters to [plaintiff], it would have violated § 1692g(a) [of the FDCPA] by not sending a notice within five days of its first . . . phone conversation with him. That conversation, as the statutory 'initial communication,' was [defendant's] last opportunity to comply with that provision" and was therefore the point at which the one-year statute of limitations began to run).

Here, neither of the two FDCPA provision under which Plaintiffs seek recovery is limited to initial acts or communications. 15 U.S.C. § 1692e(2)(a) provides that a debt collector may not use any false, deceptive, or misleading representation of "the character, amount or legal status of any debt" in connection with the collection of any debt. 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Accordingly, the Court finds that each false, deceptive, or misleading representation under 15

U.S.C. § 1692e(2)(a) and each use of unfair or unconscionable means in connection with the collection of debt alleged in this case may constitute a discrete violation of the FDCPA. *See, e.g., Devine v. Nationstar Mortg. LLC*, No. CV 15-1361, 2015 WL 6555424, at *5 (E.D. Pa. Oct. 28, 2015) ("In the instant matter, Plaintiff has brought his claim under Section 1692e of the Act. Such a claim is distinguishable from that in which the obligations under § 1692g(a) related only to collector's *initial communication* and thus subsequent communications could not support a time-barred cause of action for violation of 1692g(a). Thus, this Court will also consider [defendant's] phone calls and letters that were made and sent within one year of the filing of Plaintiff's Complaint discrete and particular act[s]. Consequently, Plaintiff's FDCPA claim is not barred by the statute of limitations." (quotations omitted)).

Plaintiff alleges that Defendant sent 26 false and misleading monthly credit reports to credit reporting agencies in violation of the FDCPA between February 2013 and March 2015.[4] The Complaint was filed on September 28, 2015. Accordingly, the Court finds that those of Plaintiff's FDCPA claims based upon reports sent within one year prior to September 28, 2015 are not barred by the one-year statute of limitations in this case. The remaining number of the 26 reports sent outside of this period however, cannot provide the basis of an FDCPA claim and are barred by the statute of limitations.

**B.     No private right of action exists for Plaintiffs under the FCRA**

Defendant also moves to Dismiss Plaintiffs' claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(a)(1)(A), also arising from Defendant's alleged inaccurate reporting to various credit agencies. Defendant's motion is granted because Congress did not provide for

---

[4] Again, Defendant has not properly raised a challenge to whether the sending of credit reports to credit reporting agencies is conduct in connection with the collection of a debt subject to the FDCPA.

private causes of action under § 1681s-2(a), and, even if Plaintiffs had alleged a violation of § 1681s-2(b)[5]—the section of the FCRA that does allow for private causes of action under narrow circumstances— the allegations in the Complaint would nevertheless be insufficient to state a claim.

FCRA § 1681s-2(a) imposes duties on "furnishers of information" to provide accurate information to consumer reporting agencies. Fair Credit Reporting Act, 15 § 1681s-2(a). The provision, however, does not allow for a private right of action to enforce violations. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011) (citing 15 U.S.C. § 1681s–2(c), (d)) ("[plaintiff] cannot base his claim on 15 U.S.C. § 1681s–2(a)(1)(A), because no private right of action exists under that provision.").

FCRA, § 1681s-2(b), however, does provide for a private right of action in certain circumstances. *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) ("15 U.S.C. § 1681s–2(b) [i]s the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information."). As the Third Circuit observed, however:

> Although a private citizen may bring an action under 15 U.S.C. § 1681s–2(b), this cause of action is not without limitations. The duties that are placed on furnishers of information by this subsection are implicated only "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency." 15 U.S.C. § 1681s–2(b)(1). Notice under § 1681i(a)(2) must be given by a credit reporting agency, and cannot come directly from the consumer.

*SimmsParris*, 652 F.3d at 358. Under the provision, therefore, if a consumer has reason to believe that the information in his or her credit report provided by a furnisher of information is inaccurate, and subsequently notifies the reporting agency from whom the report was received of the issue, the reporting agency has a duty to conduct an investigation regarding the accuracy of the

---

[5] Plaintiffs, in their briefing, have argued that a private right of action exists under § 1681s-2(b).

challenged information and to notify the furnisher of that information of the dispute. Upon notification by the credit reporting agency, and only upon notification, the furnisher has a duty to "conduct an investigation with respect to the disputed information," 15 U.S.C. § 1681s-2(b)(1)(A), and then to review and report the results of its investigation back to the consumer reporting agency. *Id.* at § 1681s-2(b)(1)(C).

Here, Plaintiffs do not plead any facts suggesting that they actually took the first step in bringing a § 1681s-2(b) claim by informing the credit reporting agencies that Plaintiffs believed the delinquency information furnished by Defendant to have been in error. In the absence of any notification to the credit reporting agencies triggering their obligation to begin the investigative process, and, later on, to notify Defendant, thereby triggering Defendant's obligations under the statute, Plaintiff cannot state a claim under § 1681s-2(b). Plaintiffs' claim under the FCRA to the extent raised under § 1681s-2(a) is therefore dismissed with prejudice and to the extent raised under § 1681s-2(b) is dismissed without prejudice.

**C.      Preemption of State Claims Under the FCRA**

Plaintiff alleges eight actions by Defendant, which breached the duty of good faith and fair dealing with respect to its servicing and management of Plaintiffs' loan, and/or which constituted negligence on the part of Defendant:

a.   Instructing Plaintiffs to Intentionally become delinquent on the Loan in order to qualify for mortgage assistance, thereby encouraging Plaintiffs to breach their contractual obligation;

b.   Refusing to communicate with Plaintiffs on multiple occasions regarding their attempts to apply for mortgage assistance with WELLS FARGO;

c.   Refusing to acknowledge Plaintiffs' efforts to conduct a short sale of the property;

d.   Incorrectly informing Plaintiffs that they could not pursue a deed-in-lieu unless and until a short sale application had been reviewed and denied;

18

e.  Referring Plaintiffs' file to foreclosure without first informing Plaintiffs of any issues related to their short sale application;

f.  Delaying the recordation of Plaintiffs' deed-in-lieu in an attempt to collect damages from Plaintiffs for the water damage suffered by the property on January 29, 2013;

g.  Continuing to report Plaintiffs, separately and individually, as delinquent on the Loan to CBI, Trans Union, Innovis, and Experian for twenty-six (26) months after Plaintiffs had executed and notarized the deed-in-lieu; and

h.  Delivering the deed-in-lieu paperwork to Plaintiffs nearly two (2) weeks after the deadline established by HUD for WELLS FARGO to do so.

Complaint, at ¶ 87.  Defendant, in response, argues that Plaintiffs' state law claims based on this conduct are preempted by the FCRA.

The Court finds that only claim (g), concerning Defendant's reporting to credit agencies, is preempted by the FCRA § 1681t(b)(1)(F) because the FCRA prohibits state law claims made against furnishers of information only to the extent that the state law claims relate to the responsibilities of a furnisher of information in reporting information to a credit reporting agency. The remaining seven of Plaintiffs' allegations, with respect to the alleged breach of duty and negligence, do not relate to improper reporting and therefore are not preempted by the FCRA.

The statute mandates that "no requirement or prohibition may be imposed under the laws of any state with respect to any subject matter regulated under *[15 USCS § 1681s-2]*, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . ." 15. U.S.C. § 1681t(b)(1)(F) (emphasis added). The controlling section mentioned in § 1681t(b)(1)(F), is § 1681s-2, which relates specifically to a furnisher of information's duties to report information to credit reporting agencies.

Courts in this District have widely embraced a "total preemption" approach when interpreting the FCRA. *See*, *Burrell v. DFS Servs, LLC*, 753 F. Supp. 2d 438, 445 (D.N.J. 2010); *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-cv-2638, 2012 U.S. Dist. LEXIS 54112, at *18

(D.N.J. Apr. 16, 2012). 15 U.S.C. § 1681t(b)(1)(F) prohibits the imposition of state laws "with respect to any subject matter regulated under [15 USCS § 1681c], relating to the responsibilities of persons who furnish information to consumer reporting agencies . . ." 15. U.S.C. § 1681t(b)(1)(F). The "total preemption" approach is consistent with the Supreme Court's holding in *Cippollone v. Ligget Grp. Inc.*, 505 U.S. 504, 521 (1992), "which found that the statute's usage of 'no requirement or prohibition' is to be construed broadly, 'suggest[ing] no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common-law rules.'" *Edwards*, 2012 U.S. Dist. LEXIS 54112, at *19. Congress specifically drafted this section of the FCRA "to eliminate state causes of action relating to the responsibilities of persons who furnish information to consumer reporting agencies." *Fallas v. Cavalry SPV I, LLC*, No. 3:12-cv-05664, 2013 U.S. Dist. LEXIS 60380, at *26 (D.N.J. Apr. 29, 2013) (quoting *Campbell v. Chase Manhattan Bank, USA, N.A.*, 2005 U.S. Dist. LEXIS 16402 (D.N.J. June 24, 2005)). "Therefore, any state law claims predicated upon the false reporting of negative credit activity are dismissed as preempted by the FCRA." *Fallas*, 2013 U.S. Dist. LEXIS 60380, at *26.

In this case, the conduct alleged in Compl. ¶ 87(g), clearly deals with credit reporting, and is therefore preempted by the FCRA. Defendant has provided no basis under the precedents interpreting FCRA preemption as to why the remaining seven allegations, dealing with other conduct, should also fall within the purview of the statute. Defendant's motion is therefore granted with respect to any state law claims based upon the conduct in ¶ 87(g), but denied with respect to the remaining allegations in ¶ 87 on this basis.

### D.     Good Faith and Fair Dealing

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005); *See Restatement (Second) of Contracts* § 205 (1981). The covenant calls for parties to refrain from doing "anything which will have the effect of destroying or injuring the right of the other party to receive" the benefits of the contract. *Brunswick Hills*, 182 N.J at 224-225 (quoting *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130, 207 A.2d 522 (1965). Defendant moves to dismiss Plaintiff's breach of duty claims on a number of bases, the most fundamental of which is that Plaintiff has failed to allege a benefit under any contract with Defendant of which Plaintiffs' were deprived by action of Defendant's alleged breach.

Good faith and fair dealing inquiries are inherently fact sensitive, but all begin with an analysis of plaintiff's expectations under a contract. "[A] plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *D iCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hill Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.,* 1182 N.J. 210, 226 (2005) (internal quotations omitted)). Moreover, "a defendant may be liable for a breach of the covenant of good faith and fair dealing even if it does not 'violate an express term of a contract.'" *Id.* (quoting *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396 (1997)). This does not, however, mean that the covenant of good faith and fair dealing may override an express term within a contract. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244, 773 A.2d 1131 (2001).

The Complaint lists Defendant's conduct which is alleged to have breached the duty of good faith and fair dealing. Seven of Platintiffs' eight allegations were not preempted by the FCRA:

    a.   Instructing Plaintiffs to Intentionally become delinquent on the Loan in order to qualify for mortgage assistance, thereby encouraging Plaintiffs to breach their contractual obligation;

    b.   Refusing to communicate with Plaintiffs on multiple occasions regarding their attempts to apply for mortgage assistance with WELLS FARGO;

    c.   Refusing to acknowledge Plaintiffs' efforts to conduct a short sale of the property;

    d.   Incorrectly informing Plaintiffs that they could not pursue a deed-in-lieu unless and until a short sale application had been reviewed and denied;

    e.   Referring Plaintiffs' file to foreclosure without first informing Plaintiffs of any issues related to their short sale application;

    f.   Delaying the recordation of Plaintiffs' deed-in-lieu in an attempt to collect damages from Plaintiffs for the water damage suffered by the property on January 29, 2013;

    h.   Delivering the deed-in-lieu paperwork to Plaintiffs nearly two (2) weeks after the deadline established by HUD for WELLS FARGO to do so.

Compl. ¶ 87.

Paragraph 87(a) fails to state a claim for breach because Defendant's employee, Wendy Freeman, is alleged to have advised Plaintiffs to become delinquent on their loan in November 2011, before the March 13, 2012 assignment which made Defendant a party to Plaintiffs' mortgage note.[6] Accordingly, Plaintiffs' have failed to allege a contract between Plaintiffs' and Defendant at that point, under which Plaintiffs could have had any reasonable expectations.

---

[6] The Court is not addressing at this time, whether, if Defendant were the servicer of Plaintiffs' loan at the time Ms. Freeman allegedly advised Plaintiffs to become delinquent on their loan, there may have been some contractual obligation created by Defendant's servicer status, because the facts required to make such a determination are not before the Court on Defendant's motion to dismiss and have not been briefed by the parties.

Paragraph 87(b) (Plaintiffs' requests for mortgage assistance), paragraphs 87(c), (d), (e) (related to the short sale), and paragraphs 87(f) and (h) (related to the deed in lieu), allege conduct that took place in whole or in part after Defendant became a party to the mortgage note, but Plaintiffs have still failed to identify the benefit under the contract of which they were deprived by Defendant's alleged bad faith. Defendant argues that no provision of the mortgage note obligates Defendant to provide, or entitles Plaintiffs to receive, post-default relief in the form of short sales, deeds in lieu, or other assistance. Plaintiffs have not identified any such entitlements and the Court has not independently identified any entitlement. In the absence of a contractual obligation, the Court cannot find that Plaintiff had any reasonable expectation to post-default mortgage assistance under the mortgage note that could have been frustrated by Defendant's alleged bad faith. *See Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 328–29 (3d Cir. 2006) ("The implied duty of good faith and fair dealing requires that neither party shall do anything which will have the effect of destroying or injuring the right of the other party *to receive the full fruits of the contract*." (emphasis added) (quotation omitted)); *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000) ("A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct *in the performance of a contractual obligation*." (emphasis added)). Accordingly, Plaintiffs' claim for breach of the duty of good faith and fair dealing is dismissed, without prejudice.

## E.    Negligence

Finally, both parties devote their briefing on Plaintiffs' negligence claim to the economic loss doctrine. Defendant contends that because "[u]nder New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law," Plaintiffs' negligence claim is barred by the economic loss doctrine and must be dismissed.

Defendants' Motion Brief, p. 16 (quoting *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002).

Defendant argues that Plaintiffs' have failed to allege that Defendant owed Plaintiffs an independent duty of care. Plaintiffs agree that the economic loss doctrine applies, but assert that an independent duty of care arises from consideration of the public interest.

Whether or not the economic loss doctrine were to apply to Plaintiffs' claim, a duty of care owed to plaintiffs is an essential element of any New Jersey state law negligence claim. As the Third Circuit has observed:

> The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care. Under New Jersey law, "whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy."

*Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010) (quoting *Monaco v. Hartz Mountain Corp.*, 178 N.J. 401, 840 A.2d 822, 833 (2004).

Here, Plaintiffs have failed to plead a claim for negligence because they have not raised any allegations establishing that Defendant owed them a duty of care, nor have they pointed to any New Jersey or federal law indicating that mortgage lenders owe borrowers a duty of care as a general matter. Instead, Plaintiffs offer only a single decision from the District of Delaware, commenting on Maryland law, which found banks had a duty of care toward customers under a general conception of the public interest. *See Hill v. Equitable Bank*, 655 F. Supp. 631, 636 (D. Del. 1987). This Court is not persuaded by Plaintiffs' out-of-District authority decided under the law of a different state.

Here, New Jersey law is clear that when the contractual relationship is between a lending bank and a borrower, the lender "does not owe a duty of care to a borrower, even if the borrower is a consumer." *Stolba v. Wells Fargo & Co.*, No. 10–6014, 2011 WL 3444078, at *5 (D.N.J. Aug.8, 2011). *See United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 704 A.2d 38, 45 (N.J. Super.

Ct. App. Div. 1997) ("There is, therefore, a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." (quotations omitted)); *Globe Motor Car Company v. First Fid. Bank, N.A.*, 273 N.J. Super. 388, 641 A.2d 1136, 1138–39 (N.J. Super. Ct. Law Div. 1993) ("[C]reditor-debtor relationships ... rarely are found to give rise to a fiduciary duty"). *See also*, discussion in *Marias v. Bank of Am., N.A.*, No. CIV. 14-4986 RBK/JS, 2015 WL 4064780, at *3 (D.N.J. July 1, 2015), *appeal dismissed* (Oct. 6, 2015) (citing *Bijeau–Seitz v. Atl. Coast Mortg. Servs., Inc.*, No. 12–6372, 2013 WL 3285979, at *6 (D.N.J. June 28, 2013) "Even if a creditor bank voluntarily counsels a borrower on its loan, the bank does not take on a specific independent duty imposed by law, and thus, the bank is not liable in tort to the borrower."). The generally adversarial nature of creditor-debtor relationships leaves no room for the implied duty of care argued by Plaintiffs. Accordingly, Plaintiffs' negligence claim is dismissed.

## IV.    Conclusion.

For the foregoing reasons, Defendant's Motion to dismiss is granted in part and denied in part. Defendant's motion to dismiss Count I, Plaintiffs' FDCPA claim, is granted in part and denied in part because although Plaintiffs have alleged that Defendant is a "debt collector" under the statute, only those violations alleged to have occurred within the one-year statute of limitations are actionable, and thus, Plaintiffs' claims based on conduct occurring before September 28, 2014, are dismissed with prejudice; Defendant's motion to dismiss Count II, Plaintiffs' FCRA claim, is granted and Plaintiffs' claim is dismissed with prejudice with respect to 15 U.S.C. § 1681s-2(a) because there is no private right of action under that provision of the statute, and without prejudice to the extent raised under 15 U.S.C. § 1681s-2(b) for failure to state a claim; Defendant's motion to dismiss Counts III and IV as preempted by the FCRA is granted as to claims based upon the

allegations in ¶ 87(g) of the Complaint and denied as to the remainder of the claims because only state law claims based on Defendant's reporting to credit agencies are barred under the statute; Defendant's motion to dismiss Count III, Plaintiffs' good faith and fair dealing claim, for failure to state a claim is granted and Plaintiffs' claim is dismissed without prejudice for failure to plead any benefit under a contract with Defendant of which Plaintiff was allegedly deprived as a result of Defendant's conduct; and, lastly, Defendant's motion to dismiss Count IV, Plaintiff's negligence claim, for failure to state a claim is granted and Plaintiffs' claim is dismissed because Plaintiffs have failed to allege any independent duty of care imposed upon Defendant by law.

Order to follow.


Dated: _____10/31/2016_____                        _____/s/ Freda L. Wolfson_____
                                                    The Honorable Freda L. Wolfson
                                                    United States District Judge

26